

FILED
MAY 08 2014

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| EUGENE H. MATHISON, | * | CIV 12-4156 |
| | * | CR 96-40048 |
| Petitioner, | * | |
| | * | AMENDED |
| - vs - | * | MEMORANDUM OPINION AND |
| | * | ORDER RE: VACATING |
| DAVID BERKEBILE, Warden, | * | CONVICTIONS AND |
| | * | RESENTENCING |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

In its Memorandum Opinion and Order in the above case dated December 20, 2013, the Court allowed the Respondent until December 31, 2013, to brief the issue of judicial estoppel and directed the parties to later submit simultaneous briefs on which of Mathison's convictions should be vacated, and what impact the same should have on the calculation of a sentence at a resentencing. Doc. 21. The Respondent did not brief the issue of judicial estoppel, and the Court released Mathison on bail on January 3, 2014. Doc. 22. The parties have now submitted simultaneous briefs on which of Mathison's convictions should be vacated.

Although Respondent still has not challenged the application of judicial estoppel, Respondent in the most recent submission relies on a concurring in part and dissenting in part opinion in *United States v. Prost*, 636 F.3d 578, 602-03 (10th Cir. 2011) (J. Seymour, concurring in part and dissenting in part), as support for his position that Mathison was not procedurally obstructed from raising a *Santos* claim by Eighth Circuit precedent. The majority opinion in *Prost*, however, rejected this view by stating:

> After all, the Eighth Circuit appears to agree with Mr. Prost that its RICO precedent did preclude the reading of the money laundering statute later adopted in *Santos. See United States v. Williams*, 605 F.3d 556, 567 (8th Cir. 2010). So to reach the result it advocates, the concurrence has to disagree with the Eighth Circuit's reading of its own precedent.

*Prost v. Anderson*, 636 F.3d at 595. This Court, likewise, will not disagree with the Eighth Circuit's

reading of its own precedent.[1]

Mathison takes the position that pursuant to the Supreme Court's holding in *United States v. Santos*, 553 U.S. 507 (2008), each of Mathison's money laundering convictions (Counts 32-37 and 53-61) should be vacated, as well as his convictions for engaging in monetary transactions in violation of 18 U.S.C. § 1957 (Counts 51-52). Mathison bases his position on Justice Stevens' concurrence in *Santos* holding that when a merger problem exists, then "proceeds" may be defined as "profits." In *United States v. Rabashkin*, the Eighth Circuit acknowledged that under Justice Stevens' controlling concurrence "'proceeds' must mean 'profits' whenever a broader definition would 'perverse[ly]' result in a 'merger problem.'" 655 F.3d 849, 865 (8th Cir. 2011) (quoting *Santos*, 553 U.S. at 527, 528 n.7). As the Eighth Circuit explained in *Rabashkin*:

> The controlling concurrence, which created a majority, explained that it could be unfair to "[a]llow[ ] the Government to treat the mere payment of the expense [of committing an offense] as a separate offense," *Id.* at 527, 128 S.Ct. 2020. Such punishment would be "in practical effect tantamount to double jeopardy," *id.*, since the unlawful activity that produced the proceeds "would 'merge' with money laundering." *Id.* at 516, 128 S.Ct. 2020 (plurality opinion).

655 F.3d at 864-865.

Respondent takes the position that if the Court has the authority to resentence Mathison - and the Court maintains that it does, Counts 32-37, 53 and 59-61, involving payments to victims of the Ponzi scheme, and Counts 54, and 56-58 involving payments to co-defendants, constitute a merger and do not involve profits required to sustain a conviction under *Santos*. Respondent maintains, however, that Counts 51 and 52, were transfers to Eldred Evey, who was not a co-defendant in the Ponzi scheme to defraud investors who believed they were investing in the commodities market, and cites to *United States v. Mathison*, 157 F.3d 541, 545 (8th Cir. 1998), for the following characterization of the transfers involved in Counts 51 and 52: "Mr. Mathison laundered some of this money by wiring it to an associate at a bank in Arizona, who then wired the money back to Mr. Mathison, or into another account, at his direction."

---

[1] The jury in Mathison's case was instructed on the definition of proceeds that was set forth in the Eighth Circuit Manual of Model Civil Jury Instructions, No. § 6.18.1956J (1996) and (2000). This definition was inconsistent with the definition of proceeds set forth in *Santos*.

2

In the Second Superseding Indictment Mathison was charged with and the jury convicted him of mail fraud, wire fraud, conspiracy and money laundering. Mathison was charged in Counts 32 through 37 with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i),[2] for mailing checks to victims of the Ponzi scheme under the pretense of the money representing profits from a commodities investment. Paragraph 6 of the Second Superseding Indictment alleges "It was part of the scheme and artifice to defraud that Eugene H. Mathison would obtain money from other victims when it became necessary to return some money to earlier victims."

Justice Stevens observed:

> The Government suggests no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime. Interpreting "proceeds" to mean "profits" eliminates the merger problem.

*Santos*, 553 U.S. at 517. Since the conduct that was charged in Counts 32 through 37 is a normal part of the mail fraud that was encompassed within Mathison's prosecution, and mail fraud, at that time, was punishable by imprisonment of not more than five years, Counts 32 through 37 constitute a merger problem and the Court is vacating the convictions for these Counts. *See Garland v. Roy*, 615 F.3d 391 (5th Cir. 2010) (Defendant in illegal pyramid scheme entitled to habeas relief under 28 U.S.C. § 2241 when the same transaction may have been used to prove both the underlying unlawful

---

[2]In the time frame Mathison was charged, 18 U.S.C. § 1956 provided in pertinent part:
(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity --

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

...

(B) knowing that the transaction is designed in whole or in part --
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

...

shall be sentenced to ... imprisonment for not more than twenty years ... .

3

activity and the money-laundering charges).

In Counts 51 and 52 Mathison was charged with and the jury convicted him of money laundering, in violation of 18 U.S.C. § 1957.[3] 18 U.S.C. § 1957 criminalizes engaging in a monetary transaction in criminally derived property of a value greater than $10,000 derived from specified unlawful activity. Counts 51 and 52 involved wire transfers of $20,000 and $12,000 to Eldred Evey. Evey was employed by a bank in Arizona. Mathison or his co-defendant Dean Chambers wired funds to Evey, who then made a wire transfer of the funds to Euro Capital Markets, a company associated with Ronald Totaro. TT 1247 - 1262. Totaro was later convicted of sixty-one counts of mail fraud, wire fraud, money laundering, engaging in unlawful money transactions and racketeering, after posing as an international banker and pocketing ill-gotten advance fees. *See United States v. Totaro*, 40 Fed. Appx. 321 (8th Cir. 2002). Evey was not a victim of Mathison's Ponzi scheme and the wire transfers in issue made to Evey were not payment to him as an employee or associate of Mathison. Mathison has failed to show that there is a merger problem with Counts 51 and 52 and the convictions from Counts 51 and 52 will not be vacated.

In Counts 53 through 59 Mathison was charged with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) for conducting a financial transaction knowing that the monetary instruments, checks, were the proceeds of mail fraud. Count 53 involved a $30,000 check to Dr. Kent Forss. Count 54 involved a $5,000 check to co-defendant Perry Gobel. Count 55 involved a $10,000 check to Charlotte Holmes, co-defendant Robert Holmes' wife. Count 56 involved a $7,000 check to co-defendant Robert Holmes, written on the same day as the check was written to his wife. The convictions for Count 54 and 56 constitute essential expenses of operating the Ponzi scheme by making payments to Mathison's business associates and co-defendants, and will be vacated. Counts 57 and 58 involved two checks written to co-defendant Dean Chambers. Count 59 involved a check written to Maclean Webber, one of the listed victims of the Ponzi scheme in this case. The conviction for Count 59 involves a merger problem and will be vacated.

---

[3]The *Santos* opinion dealt with money laundering under 18 U.S.C. § 1956, not 18 U.S.C. § 1957. It appears that the Eighth Circuit would apply the *Santos* holding to a prosecution under 18 U.S.C. § 1957. *See United States v. Clay*, 618 F.3d 946, 954 n.6 (8th Cir. 2010) (reviewed under plain error standard whether district court should have instructed the jury that the term "proceeds" meant "profits" in a prosecution under 18 U.S.C. § 1957).

Dr. Kent Forss testified that he invested in Universal Investment Group, believing he was investing in the commodities market. TT 567. Dr. Forss testified that after he requested to receive $60,000 of his investment, he was issued a check in the amount of $30,000. TT 573. This payment to Dr. Forss merges with the fraud scheme, so the conviction for Count 53 will be vacated.

According to the trial testimony Charlotte Holmes cashed in a CD and initially invested $1,000 in Northern States Investment Company in her husband's name. TT 1695-1696. Charlotte Holmes, who was employed, later invested $10,000 in April of 1995 and $5,000 in November of 1995. TT 1712. There is also testimony that some of the investment statements were in Charlotte Holmes' name. TT 1723. Charlotte Holmes later requested to take out $10,000 from the Northern States Investment Group and a check for $10,000 was issued to her with a note saying "complete liquidation of partner share." Gov. Ex. 194. TT 1993. The $10,000 paid to Charlotte Holmes as an investor or as a business expense of paying a partner, constitutes a merger problem under *Santos*, and the conviction under Count 55 is vacated.

Counts 57 and 58 for two checks written to co-defendant Dean Chambers do not clearly constitute an essential expense of the fraud scheme in light of the evidence regarding those payments. Chambers testified, and no one has refuted that testimony, that checks in the amount of approximately $60,000 were written to him, but that he cashed them and brought the cash back to Mathison, based on Mathison's direction. TT 2066. There is no merger problem presented in Counts 57 and 58, and the convictions on those Counts will not be vacated.

Counts 60 and 61 are § 1956 money laundering charges for wire transfers of $19,000 and $11,000 to Ben Kienitz. Ben Kienitz testified that he invested a total of $100,000 in Perob Investments, believing he was investing in the commodities market. TT 991-992, 1002. After Kienitz requested money to be used for a down payment on a house for his daughter, he was wired $19,000 on August 12, 1996, and was later wired $11,000 on September 5, 1996. TT 1009. These payments merge with the fraud scheme and the convictions for Counts 60 and 61 will be vacated.

Based on the *Santos* holding, the money laundering convictions on Counts 32 through 37, Counts 53 through 56, and Counts 59, 60, and 61 must be vacated. Mathison must be resentenced in light of these convictions being vacated.

Respondent cites to the *Santos* opinion on p. 528 for the proposition that the money

5

laundering convictions not vacated "would be subject to the same mandatory sentencing guidelines that were in place at the time Mathison was originally sentenced." Doc. 27 at p. 8. Justice Stevens' concurring and controlling opinion in *Santos* notes that the respondents' direct appeal was decided several years before *Booker* and states: "If Justice ALITO's opinion were to carry the day, both respondents would return to prison to serve the remainder of their lengthy sentences." 553 U.S. at 528. Justice Alito's opinion, however, is a dissenting opinion, which quite obviously did not carry the day, and Mathison is not restricted to the sentencing structure in place at the time of his original sentencing. *See Pepper v. United States*, 131 S.Ct. 1229, 1248-1249 (2011) ("The differences in procedural opportunity that may result because some defendants are inevitably sentenced in error and must be resentenced are not the kinds of 'unwarranted' sentencing disparities that Congress sought to eliminate under § 3553(a)(6).").

Respondent is also incorrect in citing to *Never Misses A Shot v. United States*, 413 F.3d 781 (8th Cir. 2005), as authority for *Santos* not applying retroactively on collateral review. In *Never Misses A Shot* the petitioner attempted to set aside his conviction based on *United States v. Booker*, 543 U.S. 220 (2005). The Eighth Circuit in *Never Misses A Shot* cited to *Teague v. Lane*, 489 U.S. 288, 310-11 (1989), for the following proposition: "New procedural rules generally do not apply retroactively unless the rule is of 'watershed' magnitude implicating 'the fundamental fairness and accuracy of the criminal proceeding,' or unless the rule prevents the lawmaking authority from criminalizing certain kinds of conduct." *Never Misses A Shot*, 413 F.3d at 783. The rule in *Santos* is not a new procedural rule. The *Santos* decision provides a new definition of a key phrase in the money laundering statute and constitutes a substantive change of law which increased the government's burden of proof, and the decision is therefore retroactive and applies on collateral review. *See Wooten v. Cauley*, 677 F.3d 303, 308 (6th Cir. 2012); *see also Davis v. United States*, 417 U.S. 333, 346-347 (1974) (conviction and punishment for an act that the law does not make criminal justifies collateral relief). Accordingly,

**IT IS ORDERED**:

1. That Mathison's money laundering convictions on Counts 32 through 37, Counts 53 through 56, and Counts 59, 60, and 61 are vacated;

2. That the United States Probation Office is directed to prepare and submit to the United States District Court a supplemental presentence investigation report by <u>May 19, 2014</u>, and the parties may submit objections to the same by <u>May 27, 2014</u>; and

3. That resentencing in the above matter will be at the Federal Courthouse in Sioux Falls in Courtroom 1 on <u>Monday, June 9, 2014 at 2:00 P.M.</u>

Dated this 8th day of May, 2014.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)        DEPUTY